```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/20/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TROY BRITT,

        Plaintiff,

-against-

CITY OF NEW YORK, et al.,

        Defendants.

17-CV-931 (AJN) (BCM)

**SANCTIONS ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    For the reasons that follow, plaintiff's counsel Vik Pawar, Esq. shall pay to defendants, as a discovery sanction, defendants' reasonable costs, including attorneys' fees, incurred in connection with (a) the depositions of Eric Levy, Esq. and Dwayne Britt, and (b) defendants' successful letter-motions to compel and for sanctions.

**I.    BACKGROUND**

    Plaintiff Troy Britt, represented by attorney Pawar, filed this action on February 8, 2017, pursuant to 42 U.S.C. §§ 1983 and 1988, seeking redress for injuries suffered during the course of an arrest by the New York Police Department (NYPD) on May 18, 2014. Defendants are the City of New York (City) and seven individual NYPD officers. *See* Second Am. Compl. (Dkt. No. 21) ¶¶ 7-8.

    On May 9, 2017, the District Judge directed that the case be conducted in accordance with this District's § 1983 Plan. (Dkt. No. 29.) The § 1983 Plan requires the parties to engage in early limited discovery, conduct settlement negotiations, and participate in a mediation, *see* Local Civil Rule 83.10, ¶¶ 5-10, before commencing in full-scale discovery and other pretrial proceedings. The Plan "does not relieve any party of its obligation to preserve documents and to issue preservation instructions." *Id*. ¶ 11.

On July 11, 2017, defendants filed their Answer. (Dkt. No. 30.) On October 3, 2017, attorney Pawar requested that the case be removed from the § 1983 Plan, citing his dissatisfaction with defendants' pre-mediation settlement position. (Dkt. No. 33.) On October 10, 2017, the District Judge denied the request. (Dkt. No. 35.)

On November 17, 2017, the parties reported that "[d]iscovery pursuant to Local Civil Rule 83.10 has been conducted" but that the mediation had not yet occurred. (Dkt. No. 39.) On December 18, 2017, Mr. Pawar reported that "[t]he mediator has issued a final report and closed his file," and asked for an initial pretrial conference before the Court. (Dkt. No. 42.) On December 19, 2017, defendants reported that the mediator closed his file only because plaintiff's counsel was unwilling to mediate. (Dkt. No. 43.) On December 21, 2017, the District Judge referred this action to me for general pretrial management. (Dkt. No. 45.)

In light of the parties' failure to mediate pursuant to the § 1983 Plan, I referred the case to the Court-annexed Mediation Program. (Dkt. No. 49.) The mediation was unsuccessful. Consequently, formal discovery commenced (*see* Dkt. No. 54), and quickly became contentious. The parties made numerous discovery-related motions, resulting in a series of conferences and orders, some of which included sanctions. (*See*, *e.g.*, Dkt. Nos. 59, 62, 71, 78, 79, 81, 83, 97, 104, 112, 116, 122.) The discussion below is limited to the events relevant to the present dispute.

In their first set of document requests, defendants asked plaintiff to "[p]roduce all photographs . . . documenting . . . all injuries that resulted from the Incident, including injuries to person and property." Def. Ltr. dated Aug. 21, 2018 (Aug. 21 Ltr.) (Dkt. No. 82), Ex. E (Dkt. No. 82-5), Req. No. 4. On April 26, 2018, plaintiff responded to all of defendants' document requests, including No. 4, with a single sentence: "Plaintiff has no documents in his possession and will

2

execute any appropriate Releases upon a showing of relevance." *Id*., Ex. F (Dkt. No. 82-6), at ECF page 3.

In their second set of document requests, defendants asked plaintiff (even more pointedly) to "[p]roduce all photographs, videotapes or audiotapes, or their electronic equivalent . . . concerning . . . any injuries and/or damages arising from, or caused or exacerbated by, the Incident," adding, "Defendant(s) request exact duplicates of all images and/or files on any electronic storage device, with all metadata, including without limitation, all date and time stamps." Aug. 21 Ltr., Ex. G (Dkt. No. 82-6), Req. No. 21. On August 7, 2018, plaintiff responded, "None relevant to the request." *Id*., Ex. H (Dkt. No. 82-7).

### A. The Photographs

On August 15, 2018 – two days before the close of the fact discovery period and one day before the plaintiff's deposition – attorney Pawar produced, for the first time, a series of 15 color photographs (the Photographs) depicting various injuries to plaintiff's right eye, face, and body. *See* Aug. 21 Ltr., Exs. A-D (Dkt. Nos. 82-1 through 82-4). Plaintiff looked somewhat worse in the Photographs than he did the mugshots taken by the NYPD immediately after his arrest, which defendants had previously produced, *see id*., Ex. J (Dkt. No. 82-10), and which – until then – had been the only photographic evidence available concerning plaintiff's claimed injuries.

Mr. Pawar produced the Photographs by email, in the form of four portable document format (pdf) files named "Britt pic 1" through "Britt pic 4," without any metadata showing when or in what format the images were originally created. At deposition on August 16, 2018, plaintiff stated that the Photographs were taken by his brother Dwayne Britt on May 19, 2014, shortly after plaintiff was released from custody. Aug. 21 Ltr. at 3. He further stated that the Photographs were provided to his former attorney, Eric Levy, before Mr. Levy transferred the file to Mr. Pawar. *Id*.

**B.     Motion Practice Regarding the Photographs**

In their letter dated August 21, 2018, defendants sought an order (i) extending the fact discovery deadline so that they could take attorney Levy's deposition; and (ii) directing plaintiff to provide the metadata associated with the original Photographs. *See* Aug. 21 Ltr. at 1-2, 5.[1]

By letter dated August 28, 2018 (Dkt. No. 88), attorney Levy stated that he obtained the Photographs on April 15, 2015, when he was first retained by plaintiff; that he believed (but was not certain) that the images were transmitted to him by text; that he saved them electronically as pdf files named "Britt pic 1" through "Britt pic 4"; that on May 12, 2015, he filed an Amended Notice of Claim against the City on plaintiff's behalf; that in early 2016 he referred plaintiff to Mr. Pawar "in order to file his complaint in federal court"; that on March 10, 2016, he sent the four pdf files to Mr. Pawar, by email; and that he did not know when the Photographs were taken.

By letter dated September 6, 2018 (Dkt. No. 90), Mr. Pawar asserted that he had "completely forgotten" about the images he received from Mr. Levy, and thus that his repeated failure to produce the Photographs was an "oversight," but was not "intentional." He then sought

---

[1] Defendants also requested that I issue a second order directing plaintiff to supplement the written report of his medical expert Hadley King, M.D. Aug. 21 Ltr. at 1, 4-5. Dr. King's original report, dated May 15, 2018, consisted of a one-page letter, addressed to Mr. Pawar, titled "Re: Troy Britt Photographs." The text of the report, in its entirety, read as follows: "After a careful review of the photographs you submitted and the timeline of the alleged assault, it is my expert medical opinion that there is significant periorbital edema on the right side. Further work up would be needed as soon as possible to evaluate for fracture or other traumatic injuries, including intercranial hemorrhage. Retinal complications would also need to be ruled out with a dilated ophthalmologic examination." Aug 21 Ltr., Ex. I. Dr. King did not include any list or description of the photographs that formed the basis of her opinion. On August 14, 2018, I directed plaintiff to supplement Dr. King's report "by identifying all photos and other data 'considered by the witness' in forming [her] opinion," as required by Fed. R. Civ. P. 26(a)(2)(B)(ii) and (iii). (Dkt. No. 79.) On August 22, 2018 – no supplement having been served – I ordered plaintiff to comply with my August 14 order no later than August 24, 2018, "on pain of sanctions." (Dkt. No. 83.) On August 24, 2018, plaintiff served Dr. King's supplemental report (Dkt. No. 87-1), in which she stated that her "comments were based on visual inspection of the photographs . . . stamped 108-111." Those numbers correspond to the Bates numbers of the mugshots previously produced by defendants.

to blame defendants for his oversight, arguing that they should have asked for the Photographs when they received plaintiff's original Notice of Claim on August 12, 2014. *Id*. at 3.

On September 10, 2018, after a discovery hearing, I granted defendants' August 21 letter-motion in part, directing plaintiff to use "every reasonable effort to obtain and produce to defendants the originals (in native format, with metadata) of the [Photographs]," and permitting defendants to conduct two non-party depositions designed to uncover the original Photographs and/or shed light on their provenance. *See* Order dated September 10, 2018 (Sept. 10 Order) (Dkt. No. 92), at 1.

In addition, I determined that an award of fees would be required in accordance with Fed. R. Civ. P. 37(a)(5) – and would run "against plaintiff's counsel alone," because counsel possessed but "unaccountably failed to produce" the Photographs for nearly two and a half years, notwithstanding that they were squarely responsive to a series of discovery requests made by defendants during that period. *Id*. at 2. Moreover, I noted, attorney Pawar had made no effort, during those nearly two and a half years, to obtain the original Photographs or the associated metadata, which could either confirm or contradict plaintiff's testimony as to the date on which they were taken. Thus, "[d]uring the period of delay, defendants were deprived of information that would have been useful not only for trial preparation but also for settlement evaluation." *Id*. Rather than determine the amount of the Rule 37(a)(5) award at that time, however, I held further sanctions proceedings in abeyance "pending the resolution of all remaining issues related to the Photographs." *Id*. at 3.

### C. Defendants' Application for Additional Sanctions

By letter-application dated October 5, 2018 (Oct. 5 Ltr.) (Dkt. No. 106), defendants reported that they conducted the depositions of Dwayne Britt and Eric Levy on September 26 and October 1, 2018, respectively. *Id*. at 1. Dwayne Britt testified that he took the Photographs the day

5

after plaintiff's arrest (May 19, 2014), using a cellphone he no longer possessed. *Id*. at 2. The original Photographs (and associated metadata) were never recovered. *Id.*; *see also* Transcript of October 24, 2018 Conference (Tr.) (Dkt. No. 125) at 6:3-13.

As a penalty for attorney Pawar's discovery misconduct, defendants asked the Court to "cap plaintiff's counsels' attorneys' fees from August 8, 2017, the date he should have disclosed and produced plaintiff's undated photographs until the time they were disclosed on August 15, 2018." Oct. 5 Ltr. at 1. Defendants reasoned that the Photographs should have been produced on August 8, 2017, pursuant to Local Civil Rule 83.10, ¶ 5(b)(iii) (requiring the plaintiff in a § 1983 Plan case to serve "any video and photographs of the incident" within 28 days of defendants' answer), and argued that they would have "evaluated the case differently," and likely made an early-stage Rule 68 offer, had they been timely provided the Photographs. *Id*. at 2.

Plaintiff opposed the application on October 9, 2018. (Dkt. No. 107), arguing that "the point is moot because defendants never served a Rule 68," and reiterating that his failure to timely disclose the Photographs was an "honest mistake." *Id*. at 1.

By order dated October 11, 2018 (Dkt. No. 108), I construed defendants' October 5 letter-application as their "final request for sanctions (other than a fee award) arising out of counsel's failure to timely produce the photographs in question," and directed them to specify, in their reply letter, when they would have served their hypothetical Rule 68 offer; the amount of the offer; and whether they were willing to serve that offer now, "so that plaintiff may either accept or decline it on a *nunc pro tunc* basis." *Id*. at 1-2.

By letter dated October 16, 2018 (Oct. 16 Ltr.) (Dkt. No. 111), defendants stated that if the Photographs had been produced on August 8, 2017, they "would have served a Rule 68 offer on

6

August 31, 2017 in the amount of $15,001.00," and confirmed that they were willing to "serve that offer now on a *nunc pro tunc* basis." Oct. 16 Ltr. at 1.

"Moreover," defendants wrote, "an attorneys' fee award should be levied against Plaintiff's counsel, Vik Pawar, as a sanction for his conduct in needlessly and vexatiously protracting this lawsuit." Oct. 16 Ltr. at 1. Defendants sought additional monetary sanctions:

(i) pursuant to Fed. R. Civ. P. 11, because plaintiff asserted frivolous claims against the New York City Department of Corrections (DOC) and its personnel,[2] *see id*. at 1-3;

(ii) pursuant to Fed. R. Civ. P. 37(a)(5), because plaintiff's counsel "intentionally" withheld the Photographs and failed to take any steps to preserve crucial evidence such as the associated metadata and Dwayne Britt's cellphone, *see id*. at 3; and

(iii) pursuant to 28 U.S.C. § 1927, because plaintiff's counsel engaged in a pattern of vexatious litigation tactics, including but not limited to overpleading the case at the outset and withholding the Photographs. *See id*. at 3-4.

Defendants did not ask for a preclusion order.[3] They did, however, specifically request reimbursement of the witness fees they paid to take the depositions of attorney Levy, Dwayne

---

[2] The DOC operates the Rikers Island correctional facility. Plaintiff's original Complaint (Dkt. No. 1) named the DOC and four unnamed DOC officers as defendants, *see id*. ¶ 9, based on allegations that plaintiff was held at the Anna M. Kross Correctional Center on Rikers Island until he could post bail, and that during that time he was "denied any medical care" for his "obviously visible injuries." *Id*. ¶¶ 19-22. In fact, plaintiff was not sent to Rikers Island at any point between his May 18, 2014 arrest and his May 19, 2014 release. His First Amended Complaint (Dkt. No. 5) dropped all factual allegations concerning Rikers Island, but continued to list the DOC and its officers as defendants. *See id*. ¶ 9. Plaintiff's current pleading, as noted above, runs only against the City and the NYPD officers allegedly responsible for his injuries.

[3] Three months later, on January 18, 2019, defendants filed a motion in *limine* asking the District Judge to preclude plaintiff from offering or referring to the Photographs at trial because they were not timely produced. *See* Def. Mem. dated Jan. 18, 2019 (Dkt. No. 154), at 8.

Britt, and Dr. King, which "would have been unnecessary had Mr. Pawar timely turned over" the Photographs. Oct. 16 Ltr. at 4.

During a conference on October 24, 2018, defendants' counsel stated, on the record, that after taking the additional depositions permitted by the Court she had no reason to doubt that the Photographs were taken "on the date that the plaintiff and his brother say they were taken." Tr. at 6:19-22. However, counsel argued, given that the Photographs tended to strengthen the plaintiff's damages case, timely disclosure would have permitted her to obtain additional settlement authority early in the litigation, which in turn "might have" resulted in a higher offer made at the April 2018 mediation or, alternatively, a Rule 68 offer made prior to or immediately after the mediation, either of which might have resolved the case. Tr. at 9:7-22.[4]

On December 10, 2018, at the parties' request, I scheduled a settlement conference for February 4, 2019, holding defendants' request for sanctions in abeyance. (Dkt. No. 135.) The conference took place as scheduled but did not produce a settlement. Consequently, a sanctions decision is required.

## II. ANALYSIS

"A federal trial court has broad discretion to select appropriate sanctions for discovery misconduct." *Seena Int'l, Inc. v. One Step Up, Ltd.*, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016) (Moses, M.J.) (citing *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991)). The "mildest" sanction "is an order to reimburse the opposing party for expenses caused by the failure to cooperate." *Cine Forty-Second St. Theatre Corp. v.*

---

[4] On the then-existing record, defendants' counsel obtained only $5,000 in settlement authority prior to the April 2018 mediation. Tr. at 11:4-9. Counsel recalls offering "one [thousand] or maybe up to two [thousand] at the unsuccessful mediation. *Id*. Had she seen the Photographs before the mediation, however, counsel believes she would have obtained – and might have used – additional settlement authority at that mediation. *Id*. at 11:18-24.

8

*Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *accord Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 188 (E.D.N.Y. 2005). More severe sanctions, up to and including orders "prohibiting the introduction of evidence on particular points" and dismissing a plaintiff's complaint, are available under various subsections of Rule 37. *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1066 ("Rule 37 provides a spectrum of sanctions."). However, "any sanction must be narrowly tailored to remedying the specific prejudice that the party seeking discovery would otherwise suffer." *Rivera v. New York City Hous. Auth.*, 1998 WL 108032, at *1 (S.D.N.Y. Mar. 11, 1998), *aff'd*, 1998 WL 193230 (S.D.N.Y. Apr. 21, 1998).

### A. Monetary Sanctions Pursuant to Rule 37(a)(5)

Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled. Thus, Rule 37(a)(5) provides that whenever a party makes a successful motion to compel disclosure – as defendants did on August 21, 2018 – the court "must," after giving an opportunity to be heard, award "the movant's reasonable expenses incurred in making the motion, including attorney's fees," subject to certain exceptions not applicable here. Fed. R. Civ. P. 37(a)(5)(A). I have already determined that Rule 37(a)(5) monetary sanctions will be awarded in this case. *See* Sept. 10 Order at 2-3. I address the scope of the Rule 37(a)(5) award below.

### B. Additional Monetary Sanctions

Rule 37(a)(5) is limited, by its terms, to the reasonable expenses "incurred in making the motion." Under Rule 37(c), however, the court may also "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)," where a party fails to provide information as required by Fed. R. Civ. P. 26(e). Rule 26(e) requires a party to "supplement or correct" a previously-served discovery response "in a timely manner if the party learns that in some material respect the [previous] response is incomplete or incorrect." In this case, plaintiff

9

provided materially incomplete and incorrect responses to both sets of document requests served by defendants, and failed to supplement or correct those responses in a timely manner. Thus, Rule 37(c) authorizes me to impose appropriate sanctions – included but not limited to those listed in Rule 37(b)(2)(A)(i)-(vi) – for plaintiff's failure to acknowledge and produce the Photographs on a timely basis. *See also Scantibodies Lab., Inc. v. Church & Dwight Co.*, 2016 WL 11271874, at *17 (S.D.N.Y. Nov. 4, 2016) (Rule 37(c) "has also been held to provide sanctions for the untimely production of documents and information required to be produced.") (citation and quotation marks omitted), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017); *Boyde v. Monroe Cty.,* 2011 WL 4457668, at *2-3 (W.D.N.Y. Sept. 23, 2011) (sanctioning a § 1983 plaintiff pursuant to Rule 37(c) for failing to produce a potentially significant note that he wrote to one of the defendants during the fact discovery period, and then producing it belatedly, claiming that he had forgotten about it until his own deposition "jogged his memory").

Similarly, under Rule 37(e), the Court may issue sanctions "to cure the prejudice" to another party where, as here, "a party failed to take reasonable steps to preserve . . . electronically stored information [ESI] that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018) ("In addition to any other sanctions expressly contemplated by Rule 37(e), as amended, a court has the discretion to award attorneys' fees and costs to the moving party."). In this case, attorney Pawar failed to take reasonable steps – or indeed any steps – to identify or preserve ESI relating to the Photographs at any time during his representation of the plaintiff.

However, defendants' request for an award covering all of their attorney's fees and other expenses since August 8, 2017, *see* Oct. 16 Ltr. at 4, must be rejected. Local Civil Rule 83.10,

¶ 5(b)(iii), required service of "[a]ny video and photographs of the incident" within 28 days of defendants' answer. Although a conscientious attorney would undoubtedly include in the production any photographs of the plaintiff's resulting injuries, even if taken in the days following the incident, I decline to impose discovery sanctions based on a reading of the rule that would make such production mandatory under the § 1983 Plan. Thus, the earliest date on which plaintiff was affirmatively required to turn over the Photographs was April 26, 2018, when plaintiff responded to defendants' first set of document requests and denied – falsely – that he possessed any photographs "documenting" the injuries that resulted from his arrest. *See* Aug. 21 Ltr., Exs. E-F.

Moreover, while it is entirely possible – perhaps even likely – that timely production of the Photographs would have altered the course of this lawsuit, there is no reason to believe that production of those images on August 8, 2017 (or, for that matter, on April 26, 2018) would have immediately brought the litigation to an end. I therefore cannot conclude that all (or even most) of defendants' litigation expenses from those dates forward were "caused by" Mr. Pawar's failure to produce the Photographs in a timely manner. *See Boyde*, 2011 WL 4457668, at *3 (rejecting defendants' request for preclusion sanctions as a remedy for plaintiff's failure to produce relevant evidence on a timely basis and instead reopening discovery to permit additional questioning of

11

certain witnesses). Nor can I make a comparable award under the authority of 28 U.S.C. § 1927[5] or Fed. R. Civ. P. 11.[6]

After careful consideration of the record in this action, as well as the parties' submissions, I conclude that Mr. Pawar must reimburse defendants for their reasonable expenses (including attorney's fees, witness fees, and transcript expenses) incurred in conducting the depositions of Eric Levy and Dwayne Britt, which would have been unnecessary had the Photographs been timely produced with associated metadata. However, I cannot reach the same conclusion concerning the deposition of Dr. King. Had the Photographs been timely produced, it is likely that Mr. Pawar would have provided them to Dr. King as well as to defendants; thus, it is possible that her expert report would have been different from the one she signed on May 15, 2018. There is no reason to believe, however, that under those circumstances defendants would have foregone the opportunity

---

[5] Defendants invoked § 1927 for the first time in their October 16, 2018 reply letter, making the request procedurally improper. Moreover, § 1927 requires the moving party to adduce "clear evidence" of "bad faith." *See, e.g.*, *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018)) ("To impose sanctions under [§ 1927], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay.") (alterations in the original). In this case, defendants request for § 1927 sanctions relies in substantial part on conduct by Mr. Pawar that is unrelated to the Photographs, including his filing of an original pleading alleging unfounded claims against the DOC and its personnel and his conduct during confidential mediation proceedings. *See* Oct. 16 Ltr. at 4. A fuller record would be required to determine whether some or all of that conduct met the definition of "bad faith" for purposes of § 1927.

[6] Defendants' Rule 11 request, which is premised on the contents of plaintiff's original Complaint, was also made for the first time in their reply letter and was therefore procedurally improper. Moreover, as defendants are well aware, a Rule 11 motion must be "made separately from any other motion" and may not be filed until the opposing party has been served with it and given 21 days to withdraw "the challenged paper, claim, defense, contention, or denial." Fed. R. Civ. P. 11(c)(2). Defendants did not comply with any aspect of Rule 11(c)(2) before seeking sanctions pursuant to Rule 11(b). Nor may they dispense with those preconditions by the simple stratagem of asking the Court to initiate a Rule 11 proceeding *sua sponte*, *see* Oct. 16 Ltr. at 1, which the Court is authorized to do under Rule 11(c)(3). *See generally Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (noting that while the 21-day safe harbor does not apply in the "rarer cases" initiated under Rule 11(c)(3), a "finding of subjective bad faith" is required).

to take her deposition and thereby avoided the associated expenses. Moreover, by the time defendants did take Dr. King's deposition on October 3, 2018 (*see* Dkt. No. 140-17), she had supplemented her report, confirming that it was based upon the mugshots, not the Photographs. Thus, defendants were adequately apprised of her opinions and the bases therefore, and have not sought to recall her for additional examination.

### C. A *Nunc Pro Tunc* Rule 68 Offer

Defendants assert that if they had they seen the Photographs on August 8, 2017, they would have made a Rule 68 offer of judgment in the amount of $15,001 on August 31, 2017. Oct. 16 Ltr. at 1; Tr. at 11:18-24. Their argument, in essence, is that fairness demands that they be permitted to make that offer now, *nunc pro tunc*.

Fed. R. Civ. P. 68 is a "cost-shifting [mechanism] designed to encourage settlements without the burdens of additional litigation." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 367 (S.D.N.Y. 2015) (quoting *Stanczyk v. City of New York*, 752 F.3d 273, 280 (2d Cir. 2014)) (alternation in the original). The term "costs," as used in Rule 68, includes "attorney's fees awardable under 42 U.S.C. § 1988." *Marek v. Chesny*, 473 U.S. 1, 8 (1985). Thus, in a § 1988 case, "a prevailing plaintiff may not recover from the defendant attorney's fees and costs accrued after an Offer of Judgment is served if the Offer exceeds the sum of the plaintiff's ultimate recovery." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 58 (2d Cir. 2012) (citing *Marek*, 473 U.S. at 11-12). *See also Marchuk*, 104 F. Supp. 3d at 368 ("Because Plaintiff's ultimate recovery was less favorable than the Rule 68 Offer [that she rejected], she is not entitled to collect costs or fees accrued after December 11, 2014."). Thus, if I permit defendants to make a Rule 68 offer now, on a *nunc pro tunc* basis – and if plaintiff rejects it – plaintiff's ability to recover attorney's fees and costs from defendants will be cut off, as of the date on which the offer is deemed to have been rejected, unless plaintiff obtains a judgment that is more favorable than the offer he rejected.

13

I assume, without deciding, that a trial court has the power, in an appropriate case, to permit a *nunc pro tunc* Rule 68 offer as a remedy for a discovery violation. *See Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) ("Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction," whether pursuant to Rule 37 or the Court's inherent authority); *Preuss v. Kolmar Labs., Inc.,* 970 F. Supp. 2d 171, 175 (S.D.N.Y. 2013) ("courts have broad discretion in determining whether and how to impose sanctions" under Rule 37(c)). The remedy is particularly appealing where, as here, the misconduct is primarily the fault of plaintiff's counsel, because it is counsel – not the plaintiff himself – whose recovery will be reduced if the ultimate judgment is less favorable than the rejected Rule 68 offer.

However, in this case I find that defendants' assertion as to what they would have done 18 months ago, under circumstances different from those actually confronting them at the time, is too speculative a basis for such a remedy here.[7] Moreover, their argument as to the appropriate date for the retroactive application of the rule hangs on their contention – which I did not accept – that plaintiff was affirmatively required to disclose the Photographs, pursuant to Local Civil Rule 83.10, 28 days after defendants filed their Answer. In any event, nothing prevented defendants from serving a fresh Rule 68 offer in August 2018, when the Photographs were finally disclosed – in the same amount as the offer they would have made in 2017, or in any other amount – but there is no evidence of such an offer in the record before me. I therefore decline to fashion a *nunc pro tunc* Rule 68 remedy in this instance.

---

[7] I note, in this regard, that defendants have not specified whether they would have offered $15,001 *plus* the plaintiff's fees and costs incurred to that date or $15,001 *inclusive* of such fees and costs.

### III. CONCLUSION

For the reasons stated above, attorney Vik Pawar shall pay to defendants their reasonable expenses, including attorney's fees, incurred in obtaining the deposition testimony of Eric Levy and Dwayne Britt, including noticing, preparing for, and conducting the depositions. In addition, Mr. Pawar must pay to defendants their reasonable expenses incurred in making, briefing, and arguing their letter-motion dated August 21, 2018 and their follow-up requests for specific sanctions arising from the same misconduct.[8]

Defendants shall submit one or more declarations evidencing their recoverable fees and costs no later than **March 6, 2019**. All sums requested must be supported by admissible evidence, including properly authenticated copies of counsel's relevant time and expense records.

Attorney Pawar may file a response – limited to the *amount* of defendants' recoverable fees and costs, including apportionment – no later than **March 20, 2019**.

There shall be no reply.

Dated: New York, New York
February 20, 2019

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[8] Defendants obtained substantially all of the relief they sought in their August 21 letter-motion, but only a portion of the additional remedies they requested in their October 5 and October 16 letters. Defendants should therefore address whether and to what extent their expenses incurred in making and arguing those applications should be apportioned. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court may . . . apportion the reasonable expenses for the motion.").